**Kemira Fibres OY, Plaintiff–Appellee,**

v.

**The UNITED STATES, Ronald H. Brown, Secretary of Commerce, and Department of Commerce, Defendants–Appellants.**

No. 95–1077.

United States Court of Appeals, Federal Circuit.

Aug. 2, 1995.

James H. Hulme, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, argued for plaintiff-appellee. Stephen L. Gibson and Christine L. Herrell, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, were on the brief for plaintiff-appellee.

Velta A. Melnbrencis, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendants-appellants. With her on the brief were Frank W. Hunger, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief were Stephen J. Powell, Chief Counsel for Import

Admin., Berniece A. Browne, Sr. Counsel and Lucius B. Lau, Atty.-Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel.

Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

The United States, the Secretary of Commerce, and the Department of Commerce (collectively "Commerce") appeal from a decision of the Court of International Trade entering judgment in favor of Kemira Fibres Oy, an importer of viscose rayon staple fiber to the United States from Finland. *Kemira Fibres Oy v. United States,* 861 F.Supp. 144 (Ct.Int'l Trade 1994). The court held that, pursuant to 19 C.F.R. § 353.25(d)(4) (1993), Commerce was not authorized to commence an administrative review with respect to Kemira's fiber importation for the period March 1, 1993 through February 28, 1994. *Id.* at 149. The court accordingly ordered Commerce to revoke an antidumping finding issued with respect to Kemira's imports, terminate Commerce's administrative review of the imports for 1993–94, and end Commerce's suspension of liquidation of entries of the imports. *Id.* Because Commerce's failure to timely comply with the notice requirement of 19 C.F.R. § 353.25(d)(4) did not deprive Commerce of the authority to commence an administrative review, we reverse and remand.

## BACKGROUND

On March 21, 1979, pursuant to the Antidumping Act of 1921, the United States Treasury Department[1] published a dumping finding[2] with respect to imports of viscose rayon staple fiber from Finland. *See Viscose Rayon Staple Fiber From Finland,* 44 Fed. Reg. 17,156 (1979) (the "fiber finding"). Kemira Oy Sateri, the only known importer

of the fiber from Finland, responded. Appellee Kemira is the corporate successor to Kemira Oy Sateri. Pursuant to 19 U.S.C. § 1675(a), Commerce conducted periodic administrative reviews of the fiber finding from 1980 through 1984. *See Viscose Rayon Staple Fiber From Finland,* 46 Fed.Reg. 19,844 (1981); 46 Fed.Reg. 49,937 (1981); 48 Fed. Reg. 47,042 (1983); 49 Fed.Reg. 29,439 (1984).

In 1984, Congress amended the antidumping law to provide that administrative reviews are to be conducted upon request only. *See* 19 U.S.C. § 1675(a) (1988). Commerce promulgated regulations requiring that interested parties request an administrative review during the annual anniversary month of each existing finding or order. *See Antidumping and Countervailing Duties; Administrative Reviews on Request; Transition Provisions,* 50 Fed.Reg. 32,556 (1985). Commerce annually publishes a notice of opportunity for interested parties to request such an administrative review.

Commerce received such requests and therefore conducted administrative reviews of the fiber finding for the two periods encompassing March 1, 1986 through February 28, 1988. *See Viscose Rayon Staple Fiber From Finland,* 53 Fed.Reg. 42,992 (1988). In the 1987–88 annual administrative review, Commerce determined that the dumping margin was zero. *Id.*

In 1989, Commerce promulgated "sunset" regulations, which provided for the revocation of orders or termination of suspended investigations "based on changed circumstances":

(d) *Revocation or termination based on changed circumstances.*

(1) The Secretary may revoke an order or terminate a suspended investigation if the Secretary concludes that: (i) The order

---

**1.** Effective January 2, 1980, authority for administering the antidumping law was transferred from the Treasury Department to the Department of Commerce. *See Nichimen Am., Inc. v. United States,* 938 F.2d 1286, 1290 & n. 6 (Fed.Cir. 1991).

**2.** The Trade Agreements Act of 1979 replaced the 1921 Act. *See Nichimen,* 938 F.2d at 1289. Any

outstanding dumping findings issued under the 1921 Act were continued in effect under the 1979 Act. *Id.* The regulations define "order" as including a "finding under the Antidumping Act, 1921." *See* 19 C.F.R. § 353.2(n) (1993). Thus, references to an "order" in this opinion apply to the finding at issue.

or suspended investigation no longer is of interest to interested parties, . . .;

\* \* \* \* \* \*

(4)(i) If for four consecutive annual anniversary months no interested party has requested an administrative review, under § 353.22(a), of an order or suspended investigation, not later than the first day of the fifth consecutive annual anniversary month, the Secretary will publish in the FEDERAL REGISTER notice of "Intent to Revoke Order" or, if appropriate, "Intent to Terminate Suspended Investigation."

(ii) Not later than the date of publication of the notice described in paragraph (d)(4)(i) of this section, the Secretary will serve written notice of the intent to revoke or terminate on each interested party listed on the Department's service list and on any other person which the Secretary has reason to believe is a producer or seller in the United States of the like product.

(iii) If by the last day of the fifth annual anniversary month no interested party objects, or requests an administrative review under § 353.22(a), the Secretary at that time will conclude that the requirements of paragraph (d)(1)(i) for revocation or termination are met, revoke the order or terminate the suspended investigation, and publish in the FEDERAL REGISTER the notice described in paragraph (d)(3)(vii) of this section.

19 C.F.R. § 353.25(d) (1993).

No interested party requested administrative review of the fiber finding during the next four consecutive anniversary months (March 1989, March 1990, March 1991, and March 1992). Consequently, Commerce conducted no reviews of that finding from March, 1988 through February, 1992. On March 1, 1993, the first day of the finding's fifth anniversary month, Commerce failed to publish a notice of intent to revoke the fiber finding in accordance with 19 C.F.R. § 353.25(d)(4). Instead, on March 12, 1993, Commerce published a notice soliciting requests for administrative review for the period March 1, 1992 through February 28, 1993. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation,* 58 Fed.Reg. 13,583 (1993). No interested party requested administrative review by the last day of the fifth anniversary month.

On June 3, 1993, Commerce published a notice of intent to revoke the fiber finding, *see Rayon Staple Fiber From Finland,* 58 Fed.Reg. 31,504 (1993), stating that "if no domestic interested party objects to this intent to revoke within thirty days from June 3, 1993, we shall conclude that the finding is no longer of interest to interested parties and shall proceed with revocation." 58 Fed. Reg. at 31,505. By letter dated June 28, 1993, the only two U.S. domestic producers of rayon staple fiber[3] objected to the proposed revocation. Accordingly, Commerce did not revoke the fiber finding.

On March 4, 1994, in the sixth anniversary month of the finding, Commerce solicited requests for administrative review for the period March 1, 1993, through February 28, 1994. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation,* 59 Fed.Reg. 10,368 (1994). On March 29, 1994, the two domestic producers responded, requesting that Commerce conduct an administrative review of the fiber finding.

On March 29, 1994, Commerce published a notice of intent to revoke the fiber finding. *See Intent to Revoke Antidumping Duty Orders and Findings,* 59 Fed.Reg. 14,608 (1994). On April 11, 1994, the domestic producers objected to the proposed revocation. In May 1994, Commerce then initiated an administrative review of the fiber for the period March 1, 1993 through February 28, 1994. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 59 Fed.Reg. 24,683 (1994).

By letter dated June 23, 1994, Kemira requested Commerce to revoke the fiber finding, contending that Commerce should have revoked the finding as of April 1, 1993, because no administrative review had been requested during the fifth anniversary

---

**3.** The respondents were Courtaulds Fiber Inc., a U.S. fiber producer since 1979, and Lenzing Fibers Corp., a new entrant to the U.S. fiber industry.

month, which was March 1993. Kemira also argued that the domestic producers' June 28, 1993 objection to revocation should not have been accepted or given any effect by Commerce because it was not properly served on Kemira, as required by 19 C.F.R. § 353.31(g).[4] By letter dated July 12, 1994, Commerce's Director, Office of Antidumping Compliance, responded:

> The *Federal Register* notice dated June 3, 1993 (58 FR 31504) stated that interested parties, "must submit their comments in writing no later than thirty days from June 3, 1993." It is the Department's practice to grant the thirty-day objection opportunity when the publication of the notice is later than that contemplated by the regulation[,] 19 CFR 353.25(d)(4)(i). The petitioner met the Department's due date for submission of its objection to revocation by filing its objection on June 28, 1993.

> Furthermore, it appears that petitioner made a good-faith effort to meet all filing requirements when it submitted its objection to the sunset revocation. The appropriate copies were filed with the Department on June 28, 1993, and were available in the official and public files for this case.

> After considering all information presented by both petitioner and respondent, the Department believes that the antidumping finding should stay in place. Therefore, the Department will proceed with the current administrative review.

Kemira then brought suit in the Court of International Trade, seeking interim and final relief. On July 26, 1994, the court granted Kemira's motion for preliminary injunction. *Kemira Fibres Oy v. United States,* 858 F.Supp. 229 (Ct.Int'l Trade 1994). The court concluded that because no interested party had objected to Commerce's proposed revocation of the fiber finding or requested administrative review by the fifth anniversary month, March 1993, as required by 19 C.F.R. § 353.25(d)(4)(iii), Commerce was obliged to revoke the outstanding finding on April 1, 1993. *Id.* at 234. Thus, the court concluded that, on June 3, 1993, Commerce had erroneously solicited objections to its proposed revocation of the finding and therefore could not have properly recognized the domestic producers' June 28, 1993 objection to the proposed revocation. *Id.* The court concluded that Commerce therefore should not have commenced an administrative review for 1993–94. *Id.* at 236. The court did not reach Kemira's alternative argument that the domestic producers' objection to the proposed revocation was not properly served on Kemira in accordance with 19 C.F.R. § 353.31(g) and thus should not have been accepted by Commerce. The court stated that it would issue a declaratory judgment accordingly unless the parties submitted further information. *Id.*

On August 8, 1994, Commerce sought dissolution of the preliminary injunction on the ground that the obligation of an interested party to respond by the last day of the fifth anniversary month in order to avoid revocation of an antidumping duty order pursuant to section 353.25(d)(4)(iii) does not arise unless and until Commerce provides notice in accordance with section 353.25(d)(4)(i)–(ii). The court rejected this argument and entered judgment in favor of Kemira, concluding that the regulation itself places interested parties on notice that, when four consecutive anniversary months have passed without any request for administrative review, the interested parties must register interest in an outstanding order by the regulatory date. *Kemira,* 861 F.Supp. at 149. The court ordered Commerce to revoke the fiber finding, terminate the administrative review of the fiber finding for 1993–94, and end the suspension of liquidation of entries of Kemira's imports.[5] *Id.* Commerce now appeals from

---

**4.** That regulation provides:

> (g) *Service of copies on other parties.* With [certain exceptions], the submitter of a document shall, at the same time, serve a copy of the document on all interested parties on the Department's service list by first class mail or personal service.
>
> * * * * * *

> The Secretary will not accept any document that is not accompanied by a certificate of service listing the parties served, the type of document served, and, for each, indicating the date and method of service.

37 C.F.R. § 353.31(g) (1993).

**5.** During an administrative review, the liquidation of the merchandise (final assessment of

that decision. We have jurisdiction over Commerce's appeal under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

▮ In reviewing a decision by the Court of International Trade, this court applies anew the statutory standard of review applied by that court to the agency's decision. *PPG Indus., Inc. v. United States,* 978 F.2d 1232, 1236 (Fed.Cir.1992). Therefore, we must affirm the court unless we conclude that the agency's determination is not supported by substantial evidence or is otherwise not in accordance with law. *Id.* The issue before us in this case is one of law, which we review without according deference to the trial court.

It is uncontested that Commerce failed to timely comply with the regulatory notice requirement of section 353.25(d)(4)(i)–(ii) and that no party objected to revocation or requested administrative review by the last day of Kemira's fifth anniversary month. However, Commerce asserts that when it fails to timely comply with the notice requirement, it is not then obligated to conclude that the domestic industry is not interested in an outstanding order and, accordingly, to revoke the order. Instead, Commerce asserts that it retains authority to issue a notice of proposed revocation after the fifth anniversary month and, if an interested party timely objects to revocation, to refrain from revocation and commence administrative review.

Kemira urges affirmance of the court's holding that, under section 353.25(d)(4)(iii), Commerce was obligated to revoke Kemira's outstanding finding and, failing that, it was precluded from conducting an administrative review. Kemira argues that the regulation entitled it to revocation under these circumstances. In the alternative, Kemira asserts that the court's decision must be upheld because the domestic parties' June 28, 1993 letter objecting to revocation was unlawfully accepted by Commerce because it was not properly served.

duties) is suspended by operation of law. *See Ambassador Div. of Florsheim Shoe v. United*

▮ As a general rule, an agency is required to comply with its own regulations. *See Dodson v. Department of the Army,* 988 F.2d 1199, 1204 (Fed.Cir.1993). Commerce admittedly failed to timely comply with its regulatory notice requirement and we do not condone that failure. However, as the Supreme Court has recognized, not every failure of an agency to observe timing requirements voids subsequent agency action, especially when important public rights are at stake. *Brock v. Pierce County,* 476 U.S. 253, 260, 106 S.Ct. 1834, 1839, 90 L.Ed.2d 248 (1986). Rather, "the 'great principle of public policy, applicable to all governments alike, ... forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided.' " *Id.* (quoting *United States v. Nashville, C. & St. L.R. Co.,* 118 U.S. 120, 125, 6 S.Ct. 1006, 1008, 30 L.Ed. 81 (1886)).

▮ Kemira has cited no controlling authority for the proposition that an agency's failure to comply with a regulatorily timing requirement voids a subsequent administrative action. However, a similar argument has been addressed in a line of Supreme Court cases dealing with timing requirements *mandated by statute.* These cases held that, even in the face of a statutory timing directive, when a statute does not specify the consequences of non-compliance, courts should not assume that Congress intended that the agency lose its power to act. *Brock,* 476 U.S. at 260, 106 S.Ct. at 1839; *United States v. Montalvo–Murillo,* 495 U.S. 711, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990); *United States v. James Daniel Good Real Property,* —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993).

In *Brock,* the Supreme Court resolved a dispute involving section 106(b) of the Comprehensive Employment and Training Act (CETA), 29 U.S.C. § 816(b), and its implementing regulations. 476 U.S. at 255, 106 S.Ct. at 1836. The statute and regulations provided that the Secretary of Labor "shall" issue a final determination as to the misuse of CETA funds by a grant recipient within

*States,* 748 F.2d 1560, 1563–65 (Fed.Cir.1984).

120 days after receiving a complaint alleging such misuse. *Id.* at 256, 106 S.Ct. at 1837. The Court examined the statutory language and legislative history to determine whether Congress intended that the Secretary lose the authority to recover misspent funds 120 days after learning of the misuse. *Id.* at 266, 106 S.Ct. at 1842. The Court held that the Secretary did not lose the power to recover misused funds after that 120–day period had expired, despite the Secretary's non-compliance with the clear statutory time limit for issuing a final determination. *Id.*

In *Montalvo–Murillo*, the Court examined a provision of the Bail Reform Act, 18 U.S.C. § 3142, which required that a suspect held in pretrial custody on federal criminal charges be detained only after a judicial officer conducted an immediate hearing. 495 U.S. at 714, 110 S.Ct. at 2075. The Court, citing *Brock*, held that, consistent with the "design and function" of the act, a failure to comply with the act's mandatory prompt hearing provision did not defeat the government's authority to seek detention. *Id.* at 719, 110 S.Ct. at 2078. Rather, once the government had discovered that the time limit for the hearing had expired, it could have asked for a prompt hearing and proceeded according to the other requirements of the act. *Id.* at 721, 110 S.Ct. at 2079.

Similarly, in *James Daniel Good,* the Court held that a failure to comply with statutory timing directives for expeditious prosecution in a civil forfeiture case under 21 U.S.C. § 881 did not justify dismissal. —— U.S. at ——–——, 114 S.Ct. at 505–07. The directives were a "series of internal notification and reporting requirements," *see* 19 U.S.C. §§ 1602–04, under which "customs agents must report to customs officers, customs officers must report to the United States attorney, and the Attorney General must 'immediately' and 'forthwith' bring a forfeiture action if he believes that one is warranted." *Id.* at ——, 114 S.Ct. at 498. The Court stated that "many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them ... do not limit their power or render its exercise in disregard of the requisitions ineffectual." —— U.S. at ——, 114 S.Ct. at 506

(quoting *French v. Edwards,* 80 U.S. (13 Wall.) 506, 511, 20 L.Ed. 702 (1872)).

Thus, in the context of an agency's failure to comply with statutorily-mandated timing directives, the Supreme Court has rejected the argument that non-compliance with a timing requirement renders subsequent agency action voidable, instead recognizing that "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." *Id.* The Court examined the "structure and history" of the provisions at issue to determine whether Congress intended to deprive the agency of the power to act or whether "the responsible officials administering the Act ... have discretion to determine what disciplinary measures are appropriate when their subordinates fail to discharge their statutory duties." *Id.*

■ Kemira argues that *Brock* and its progeny are irrelevant to the case before us for two reasons. First, Kemira argues that section 353.25(d)(4)(i)–(ii) are not simply "internal timing requirements," but are procedures "culminating in final agency action." While the timing requirement involved in the *James Daniel Good* case was "internal," those involved in *Brock* and *Montalvo–Murillo* certainly were not. *Brock* involved the requirement of a prompt final determination and *Montalvo–Murillo* the requirement of a prompt predetention hearing. Therefore, we are unpersuaded that this distinction is of significance. Second, Kemira argues that, unlike the *Brock* line of cases, the regulation at issue is not silent with respect to the consequences of non-compliance, *i.e.,* the adverse consequence is that Commerce must revoke the finding in accordance with section 353.25(d)(4)(iii). However, this argument assumes the very result urged by Kemira. Commerce provides a different view, that is, that section 353.25(d)(4)(iii) calls for revocation only if no interested party has objected to a proposed revocation after publication in accordance with section 353.25(d)(4)(i)–(ii). We agree with Commerce that the regulation does not specify a consequence of its non-compliance with subsections (i)–(ii).

The argument rejected by the Supreme Court is even less cogent when posited by Kemira in the context found here, when the relevant statute does not provide a timing requirement, but the requirement is found in the administering agency's implementing regulations. Congress has provided no indication that it intended that Commerce lose its authority to substantively administer the antidumping statute if it misses the regulatory deadline imposed by section 353.25(d)(4)(i)–(ii). Kemira should not become immune from the antidumping laws because Commerce missed the deadline. The national interest in the regulation of importation should not fall victim to an oversight by Commerce, especially when domestic parties express their interest in an outstanding order. Any harm caused to Kemira by the slight delay in administrative action (and none has been shown) would be disproportionate to the potential harm to domestic industry were we to accept Kemira's argument. We therefore reject the position that Commerce lost its authority to commence an administrative review because of its delay in giving notice.

█ Kemira further argues that it is "entitled" to revocation by virtue of section 353.25(d)(4)(iii). Commerce counters that its regulation does not confer a right of revocation on an importer, but that it merely provides an orderly procedural means for ascertaining industry interest. Commerce also argues that it is entitled to deference in administering its own procedural rules. We look to the statute and its history to determine whether Commerce's construction of the regulation is a permissible one. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). *Cf. Asociacion Colombiana de Exportadores de Flores v. United States*, 903 F.2d 1555, 1559 (Fed.Cir.1990) ("[An agency's] interpretation of its own regulations implementing 'the statutes it administers' is entitled to 'substantial weight.'") (citation omitted).

The antidumping law provides that Commerce "may" revoke orders under appropriate circumstances. *See* 19 U.S.C. § 1675(c)

(1988). Thus, the statute left much to Commerce's discretion regarding the revocation of orders. *See Oregon Steel Mills, Inc. v. United States*, 862 F.2d 1541, 1544–46 (Fed. Cir.1988) ("The Secretary of Commerce ... has been entrusted with responsibility for implementing the antidumping law. The Secretary has broad discretion in executing the law.") (citation omitted).

We next look to the legislative history. Title 19, section 2112, provides that whenever the President enters into a trade agreement, he shall submit the agreement to Congress, together with a draft of an implementing bill and a statement of any administrative action proposed to implement the agreement. *See* 19 U.S.C. § 2112(d), (e) (1988). The statements submitted to Congress in the administration's proposal to implement the Trade Agreements Act of 1979 contained the following sentences:

> The [Administering] Authority may revoke, in whole or in part, a Countervailing Duty Order or Antidumping Duty Order ... after review. *Any such revocation ... shall be made only after publication of notice of intent to revoke ...* in the Federal Register.

*Statements of Administrative Action,* H.R.Doc. No. 153, Part II, 96th Cong., 1st Sess. (1979) at 430 (emphasis added). This document was expressly approved by Congress. *See* 19 U.S.C. § 2503(a) (1988) ("Congress approves the trade agreements ... submitted to the Congress on June 19, 1979, and the statements of administrative action proposed to implement such trade agreements submitted to the Congress on that date."); *see also Texas Crushed Stone Co. v. United States*, 35 F.3d 1535, 1540 & n. 6 (Fed.Cir.1994). Thus, when Congress enacted the current antidumping statute, it ratified Commerce's position that revocation of outstanding orders would occur only after publication of notice of intent to revoke. Furthermore, in enacting the 1984 amendment, which changed automatic periodic reviews to reviews by request only, the House emphasized that Commerce "should be able to revoke antidumping or countervailing duties *that are no longer of interest to domestic interested parties.*" H.R.Conf.Rep.

No. 1156, 98th Cong., 2d Sess. 181 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4910, 5220, 5298 (emphasis added). Thus, Congress envisioned that assessment of the interest of the domestic parties was necessary before revocation may occur. Indeed, this view comports with a primary purpose of the antidumping law, which is to protect domestic industry. *See* S.Rep. No. 249, 96th Cong., 1st Sess. 37 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 423.

We now turn to the implementing regulation. When Commerce proposed the regulation at issue, it emphasized the provision of notice to the domestic industry:

> Paragraph (d)(4) provides for possible revocation of an order ... based on an absence of interest (as demonstrated by the absence of requests for administrative review) for a period of five consecutive years. This "sunset" provision will eliminate old orders and suspended investigations no longer of interest to domestic interested parties. *Prior to revoking or terminating under this subsection, the Secretary will, in addition to publishing notice in the Federal Register, write individually to each known producer and seller of the like product in the United States. If any producer or seller, or any other interested party, objected, the Secretary would not revoke the order ... under paragraph (d)(4).*

*Antidumping Duties,* 51 Fed.Reg. 29,046, 29,052 (1986) (proposed rule) (emphasis added). *See also Countervailing Duties,* 50 Fed. Reg. 24,208, 24,213–14 (1985) (proposed rule for parallel countervailing duty "sunset" provision). In responding to comments regarding the proposed regulation, Commerce again highlighted the necessity of notice in order to ascertain industry interest:

> Congress has recognized that the Department may revoke an order ... in the

absence of domestic party interest in continuing the order.... *See* H.R.Rep. No. 1156, 98th Cong., 2d Sess. 181 (1984). The so-called "sunset" provision is merely a means for ascertaining if interest in continuation of the order exists....

> *[B]ecause the "sunset" provision is a means for ascertaining whether there is interest in continuation of an order, it is appropriate that the Department take reasonable steps, including giving actual notice of the intent to revoke ..., to determine whether such interest exists.*

*Antidumping Duties,* 54 Fed.Reg. 12,742, 12,758 (1989) (final rule) (emphasis added). *See also Countervailing Duties,* 53 Fed.Reg. 52,306, 52,333 (1988) (final rule for parallel countervailing duty "sunset" provision). Commerce's goal in promulgating section 353.25(d)(4) was to provide a means for ascertaining industry interest.

Section 353.25, entitled "Revocation of orders; termination of suspended investigation," sets forth circumstances under which Commerce may revoke an outstanding order. Paragraph (d), entitled "Revocation or termination based on changed circumstances," authorizes Commerce to revoke an order "if the Secretary concludes that: (i) The order ... no longer is of interest to interested parties.[6]" 19 C.F.R. § 353.25(d)(1)(i) (1993). Paragraph (4), the "sunset" regulation, sets forth procedures for determining when the requirements of paragraph (d)(1)(i) are met so that revocation pursuant to that paragraph may occur. While in paragraph (4)(iii) Commerce is directed to conclude that the requirements of paragraph (d)(1)(i) for revocation are met if no interested party objects by the last day of the fifth anniversary month, Commerce is first directed, in paragraphs (d)(4)(i)–(ii) to publish notice in the Federal Register and to notify known interested parties.

---

**6.** Section 353.25(d)(i) defines "interested parties" as a producer in the United States of the like product or a seller (other than a retailer) in the United States of the like product produced in the United States; a certified or recognized union or group of workers which is representative of the industry or of sellers (other than retailers) in the United States of the like product produced in the United States; a trade or business association a majority of the members of which are producers in the United States of the like product or sellers (other than retailers) in the United States of the like product produced in the United States; or an association a majority of the members of which are interested parties (as previously defined). *See* 19 C.F.R. §§ 353.25(d)(i); 353.2(k)(3)–(k)(6) (1993).

Kemira argues that Commerce need not notify interested parties in accordance with section 353.25(d)(4)(i)–(ii) because the regulation itself places the domestic industry on notice of Commerce's intent to revoke after four consecutive anniversary months. We disagree. First, were we to accept Kemira's position, the requirements of section 353.25(d)(4)(i)–(ii) would be rendered superfluous. Second, the regulation at issue here, indeed the antidumping law itself, is in place to protect the domestic industry. While we agree that section 353.25 addresses the interest of an importer in having Commerce revoke an outstanding order, it is only after Commerce concludes that the order is no longer of interest to a domestic party that the order is revocable. Thus, it is not consistent with the basic purpose of the antidumping law or the regulation at issue to place the burden of monitoring Commerce's actions solely on the domestic industry, as Kemira suggests. Finally, there may be cases when administrative review is not warranted because interested parties are satisfied with an existing order. *See* H.R.Rep. No. 725, 98th Cong., 2d Sess. 22–23 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5127, 5149. In such a case, the domestic industry may have no incentive to request administrative review of the order. Thus, the absence of a request for administrative review, while it may indicate lack of interest, can also indicate satisfaction with the status quo. Consequently, Commerce may not reasonably conclude that there is a lack of interest in an outstanding order merely by the absence of a request for review; rather, only after publishing notice of proposed revocation may Commerce properly conclude that the order at issue is no longer of interest so as to be revocable. Notice of intent to revoke must precede revocation.

It is clear that notification of domestic parties so that their interest in revocation of an outstanding order may be ascertained and addressed is an overriding consideration in the regulatory framework and the legislative history of the antidumping statute. Given this, we conclude that Commerce's interpretation was a reasonable one. *See Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782. Revocation must be predicated on a lack of domestic industry interest and such interest must be ascertained through notification of an intent to revoke. The timing requirements of section 353.25(d)(4)(i)–(ii) are merely procedural aids in accomplishing this prerequisite to revocation. They are subordinate to the overriding requirement of notice. A contrary interpretation would defeat the clear intent of Congress.

Since the requirement at issue is merely procedural, Kemira must establish that it was prejudiced by Commerce's non-compliance with this requirement. *See, e.g., American Farm Lines v. Black Ball Freight Serv.,* 397 U.S. 532, 539, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970) ("[I]t is always within the discretion of . . . an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of [an agency] in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party.") (citing cases); *Cornelius v. Nutt,* 472 U.S. 648, 663, 105 S.Ct. 2882, 2891, 86 L.Ed.2d 515 (1985) (agency delay in providing notice of impending employee removal proceeding was harmless because it did not cause substantial harm or prejudice); *Belton Indus., Inc. v. United States,* 6 F.3d 756, 761 (Fed.Cir.1993) (requiring showing of prejudice from Commerce's non-compliance with countervailing duty sunset provision), *cert. denied,* —— U.S. ——, 114 S.Ct. 925, 127 L.Ed.2d 218 (1994). Kemira has not established such prejudice.

Finally, we disagree with Kemira's assertion that our holding will afford Commerce latitude to extend indefinitely the period during which an antidumping order may remain outstanding. We do not hold that Commerce may disregard its regulatory procedures at will, only that a failure of Commerce to comply with section 353.25(d)(4)(i)–(ii) does not divest Commerce of its authority to correct an error in a manner consistent with the antidumping statute by promptly publishing a notice of intent to revoke and administering the antidumping law accordingly. In fact, we strongly deplore Commerce's or any other agency's failure to follow its own regulations. Such failure harms those who assume agency

compliance and are prejudiced by the non-compliance. However, such prejudice has not been shown here.

In the alternative, Kemira argues that we must uphold the court's decision because the domestic parties' June 28, 1993 letter was unlawfully accepted by Commerce since it was not served on Kemira and was not accompanied by a certificate of service as required by 19 C.F.R. § 353.31(g). This regulation also provides that Commerce will not accept any document not accompanied by a certificate. Because Kemira has not established that it has been prejudiced by this procedural error, we find its argument unpersuasive.

## CONCLUSION

Because the court erred in holding that Commerce was obligated to revoke the outstanding order, we reverse and remand for further proceedings consistent with this opinion.

*REVERSED and REMANDED.*