**Slip Op. 05-46**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: Judge Judith M. Barzilay**

|  |  |  |
|---|---|---|
| | x | |
| Dixon Ticonderoga Company, | : | |
| Plaintiff, | : | |
| | | **Court No. 04-00027** |
| v. | : | |
| United States Customs and Border Protection | : | |
| and Robert C. Bonner, | : | |
| Defendants. | : | |
| | x | |

[Plaintiff's Motion for Judgment on Agency Record granted.]

Decided: April 4, 2005

*Gray Robinson, P.A.* (*A. Anthony Giovanoli*), *Guy S. Haggard* for Plaintiff.

*Peter D. Keisler,* Assistant Attorney General; *David M. Cohen*, Director; *Jeanne E. Davidson*, Deputy Director, (*David S. Silverbrand*), Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch; *Charles Steuart*, Office of Chief Counsel, United States Customs & Border Protection, of counsel, for Defendant.

**OPINION**

**BARZILAY, JUDGE:**

Plaintiff, Dixon Ticonderoga Company ("Dixon"), seeks review of a decision by Defendant, United States Customs and Border Protection of the Department of Homeland Security ("Customs" or "the Government") to deny its application to receive its share of assessed Chinese pencil anti-dumping duties for fiscal year 2003. Customs denied Dixon's application because it was filed late, and Dixon argues that this decision was arbitrary and capricious because

Customs itself failed to publish notice of intent to distribute the offset in the Federal Register at least 90 days before the end of Customs' fiscal year, as required by Customs' own regulations. Dixon also argues that Customs' failure to timely publish this notification was substantially prejudicial, and requests that this court either require Customs to reverse its denial of Dixon's application and allow Dixon to receive its share of the disbursement for fiscal year 2003, waive the 2003 application deadline for all U.S. pencil manufacturers, or require Customs to void the distribution process thus far and republish its Notice of Intent so that applications may be resubmitted. Although the court finds that the regulatory deadline set forth in 19 C.F.R. § 159.62(a) constitutes a mere procedural guideline, Dixon's motion is granted because the court finds that Customs' failure to abide by its own notice regulations was substantially prejudicial to Dixon.

**Background**

This case concerns a distribution pursuant to the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), also known as the Byrd Amendment.[1] 19 U.S.C. § 1675c (2005). In 1994, the Pencil Manufacturers Association, of which Dixon is a member, petitioned the United States Department of Commerce ("Commerce") alleging that certain cased pencils from the People's Republic of China were being sold in the United States at less-than-fair value. *See*

---

[1] The CDSOA provides that assessed duties received from antidumping orders, countervailing duty orders, or findings under the Antidumping Act of 1921 be distributed to "affected domestic producers" for certain qualifying expenditures. 19 U.S.C. § 1675c. This court notes that recently, a WTO Appellate Panel held that the Byrd Amendment is not in conformity with the United States' obligations under the WTO Agreements. WTO Appellate Body, United States Continued Dumping and Subsidy Offset Act of 2000, http://docsonline.wto.org/DDFDocuments/t/WT/DS/234ABR.doc, at 120-21. The validity of the Byrd Amendment is not at issue in this case, and this court applies the law as it stands.

*Notice of Final Determination of Sales at Less than Fair Value: Certain Cased Pencils From the People's Republic of China*, 59 Fed. Reg. 55625 (Nov. 8, 1994). After concluding that pencils from China were being sold at less-than-fair value in the United States, Commerce published an antidumping duty order. *See Antidumping Duty Order: Certain Cased Pencils from the People's Republic of China*, 59 Fed. Reg. 66909 (Dec. 28, 1994).

As part of the CDSOA distribution process, Customs is statutorily required to publish a "Notice of Intent to Distribute" at least 30 days before the distribution of a continued dumping and subsidy offset. 19 U.S.C. § 1675c(d)(2) (2003). Furthermore, according to Customs' own regulations, it is required to publish the Notice of Intent to Distribute at least 90 days before the end of the fiscal year. 19 C.F.R. § 159.62(a) (2003). Claimants seeking a share of the distribution then have 60 days from the date of publication of the Notice of Intent to Distribute to file the certifications required to receive an offset distribution. 19 C.F.R. § 159.63(a) (2003). In 2003, Customs published the Notice of Intent to Distribute on July 14 – 78 days prior to the end of the fiscal year and 12 days after the regulatory deadline. Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 68 Fed. Reg. 41,597 (July 14, 2003).

On October 23, 2004 – 102 days after Customs' publication of the Notice of Intent to Distribute – Dixon filed its application to receive a portion of the assessed Chinese pencil duties for that fiscal year. Dixon argued to Customs that Customs' own failure to provide notice as required by 19 C.F.R. § 159.62(a) caused it as well as other domestic pencil manufacturers to file late. Nonetheless, Customs denied Dixon's application in a letter dated December 16, 2003, stating that because "all certifications were due no later than September 12, 2003," and because

Customs received Dixon's certification on October 24, 2003, "more than 60 days after the publication date of the FR Notice, [Customs] must deny [Dixon's] claim for a FY 2003 disbursement under the CDSOA." *Certified Admin. R.* at 3.

## Analysis

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i). Thus, the court will set aside any agency action, findings or conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A) (2005). Under this standard of review, an administrative action must be upheld if the court finds that the agency "has considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Baltimore Gas & Electric v. N.R.D.C.*, 462 U.S. 87, 105 (1983).

It is uncontested that Customs failed to timely comply with the regulatory notice requirement of section 159.62(a)[2]. Customs, however, asserts that although it published notice of its intent to distribute late, it retains the authority to reject distribution applications for untimeliness pursuant to 19 C.F.R. § 159.63(a)[3]. Dixon argues that this seeming "double-

---

[2] Section 159.62(a) states:
At least 90 days before the end of a fiscal year, Customs will publish in the Federal Register a notice of intention to distribute assessed duties received as the continued dumping and subsidy offset for that fiscal year. The notice will include the list of domestic producers, based upon the list supplied by the USITC (see § 159.61(b)(1)), that would be potentially eligible to receive the distribution.

[3] Section 159.63(a) states:
Requirement and purpose for certification. In order to obtain a distribution of the offset, each affected domestic producer must submit a certification, in triplicate, or electronically as authorized by Customs, to the Assistant Commissioner, Office of Regulations and Rulings, Headquarters, or designee, that must be received

standard" of treating its own deadline to provide notice to the domestic industry as a "mere guideline" while treating the domestics' deadline to apply for distributions as a "hard and strict rule" constitutes an arbitrary and capricious construction of Customs' own regulations.  Dixon further argues that Customs' failure to provide notice of its intent to distribute by the regulatory deadline is a strong signal to the domestic industry that no distribution is forthcoming for that fiscal year, as domestics have no other indication that a distribution is forthcoming.[4]  Thus, because of its own failure to provide timely notice, according to Dixon, Customs should have waived the deadline for domestic pencil manufacturers, provided notice of a reasonable extension, or simply re-started the process.

Customs responds that it acted reasonably in providing the full 60 days required by section 159.63(a) after the date of publication of notice in the Federal Register of its intent to

---

within 60 days after the date of publication of the notice in the Federal Register, indicating that the affected domestic producer desires to receive a distribution. The certification must enumerate the qualifying expenditures incurred by the domestic producer since the issuance of an order or finding for which a distribution has not previously been made, and it must demonstrate that the domestic producer is eligible to receive a distribution as an affected domestic producer.

[4] The court notes that domestic producers are under notice that Customs may publish its intent to distribute in the Federal Register at any time prior to the 90th day before the end of the fiscal year.  19 C.F.R. § 159.62(a) (2003).  Although Customs cites to a number of cases in support of the proposition that publication of an item in the Federal Register constitutes constructive notice of anything within that item, *see, e.g., Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947), the court finds merit in Plaintiff's response that such a position renders the regulation meaningless.  Under Defendant's theory, domestic producers would be required to expect notice not prior to the 90th day before the end of the fiscal year, as directed by the regulation, but rather at any given time because constructive notice, even outside the purview of the regulation, would suffice to trigger the 60-day deadline within which certification must be submitted under section 159.63(a).

distribute, and that Dixon was given constructive notice of the intent to distribute by virtue of this publication.

The Supreme Court, in *Brock v. Pierce County*, 476 U.S. 253 (1986), provides direction regarding this issue. The Court in that case considered section 106(b) of the Comprehensive Employment and Training Act ("CETA"), 29 U.S.C. § 816(b) and its implementing regulations. 476 U.S. at 255. The statute and regulations directed the Secretary of Labor to issue a final determination as to the misuse of CETA funds by a grant recipient within 120 days after receiving a complaint alleging such a misuse. *Id.* at 256. After examining the statutory language and legislative history, the Court held that the Secretary's failure to satisfy the 120-day statutory timing requirement did not necessarily deprive the Secretary of the power to recover misused funds. *Id.* at 266. The Court stated that it "would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake." *Id.* at 260.

Furthermore, the Federal Circuit's opinion in *Kemira Fibres Oy v. United States*, 61 F.3d 866 (Fed. Cir. 1995), is instructive. In that case, the Department of Commerce failed to publish a notice of its intention to revoke a particular finding that had been made under the antidumping laws, in violation of Commerce's own regulations. *Kemira*, 61 F.3d at 868. Considering whether Commerce's failure to comply with the regulatory notice requirement voided its subsequent administrative action, the Court held that the administrative default by Commerce did not compel the court to revoke the antidumping finding where the plaintiff, a foreign importer, could not establish that it was prejudiced by the default. *Id.* at 876. The Court explained that the

plaintiff "should not become immune from the antidumping laws because Commerce missed the deadline . . . [t]he national interest in the regulation of importation should not fall victim to an oversight by Commerce . . ." *Id.* at 873.

Thus, this court must first determine whether, under the *Brock* standard, Congress intended Customs to lose its authority to administer the CDSOA, having failed to meet its regulatory timing requirements. *Cf. Brock*, 476 U.S. at 266. If the court finds that Congress did not intend Customs to lose its authority, and that the timing requirements are merely procedural guidelines, the court must then inquire into whether Dixon was substantially prejudiced by Customs' failure. *Cf. Kemira*, 61 F.3d at 873.

**A.      Customs' Authority to Administer the CDSOA**

As a general rule, an agency is required to comply with its own regulations. *Kemira*, 61 F.3d at 871 (citation omitted). However, "not every failure of an agency to observe timing requirements voids subsequent agency action." *Id.* (citing *Brock*, 476 U.S. at 260). In *Kemira*, the Federal Circuit noted that "in the context of an agency's failure to comply with statutorily-mandated timing directives, the Supreme court has rejected the argument that non-compliance with a timing requirement renders subsequent agency action voidable." 61 F.3d at 872. The Federal Circuit went on to indicate that this argument "is even less cogent . . . when the relevant statute does not provide a timing requirement, but the requirement is found in the administering agency's implementation regulations." *Id.* at 873. The court is therefore directed to the statute and its history to determine whether Customs' construction of the regulation is a permissible one. *Kemira*, 61 F.3d at 873. (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,

467 U.S. 837, 844-45 (1984); *Asociacion Colombiana de Exportadores de Flores v. United States*, 903 F.2d 1555, 1559 (Fed. Cir. 1990) ("[An agency's] interpretation of its own regulations implementing 'the statutes it administers' is entitled to 'substantial weight.'") (citation omitted)). The CDSOA instructs Customs to publish a Federal Register notice at least 30 days before a distribution, but does not bind this time limitation to any specific date in either the calendar or fiscal year. Specifically, it provides that:

> [t]he Commissioner shall publish in the Federal Register at least 30 days before the distribution of a continued dumping and subsidy offset, a notice of intention to distribute the offset and the list of affected domestic producers potentially eligible for the distribution based on the list obtained from the Commission under paragraph (1). The Commissioner shall request a certification from each potentially eligible affected domestic producer . . .

19 U.S.C. § 1675c(d)(2) (2003). Thus, the statute left up to Customs' determination when during the fiscal year to publish the Federal Register notice, and also when applications for distributions must be received after notice has been provided. Customs further explains that

> there is a window of 90 days between the date Customs receives the certification and the date the monies are distributed during which Customs must review and process the claims. . . . [C]alculating the distribution amounts is a long, detailed, and difficult process. . . . At a certain point there must be a deadline . . . Without the deadline, the amount available for distribution could never be fixed, there would never be an end to the processing of CDSOA distributions . . . .

*Def.'s Opp. to Pl.'s Mot. for J. on the Agency Record* at 8-9. The statutory language clearly indicates Congress' intention that the domestic industry affected by dumping or subsidies benefit from the trade laws, but is silent regarding timing requirements. Thus, notification for domestic parties of a forthcoming distribution is a paramount concern to the administration of the CDSOA, as is ensuring that applications are received and offsets are disbursed according to a strict time

line. The court finds that the timing requirements of section 159.62(a) are merely procedural aids in applying the CDSOA. Furthermore, Customs has articulated a rational connection between the statutory and regulatory framework and its decision to strictly apply section 159.63(a).

**B.      Substantial Prejudice**

Since the requirements at issue are merely procedural aids, in order to prevail Dixon must establish that it was prejudiced by Customs' non-compliance with section 159.62(a). *See Kemira*, 61 F.3d at 875 (citing *American Farm Lines v. Black Ball Freight Serv.* 397 U.S. 532, 539 (1970); *Cornelius v. Nutt*, 472 U.S. 648, 663 (1985); *Belton Indus., Inc. v. United States*, 6 F.3d 756, 761 (Fed. Cir. 1993)) ("Since the requirement at issue is merely procedural, Kemira must establish that it was prejudiced by Commerce's non-compliance with this requirement."). *See also Intercargo Insurance Co. v. United States*, 83 F.3d 391 (1996) ("The public interest in the administration of the importation laws should not 'fall victim' to the failure by the Customs Service to use the requisite language in its extension notices, if the oversight has not had any prejudicial impact on the plaintiff"). Prejudice means "injury to an interest that the statute, regulation, or rule in question was designed to protect." *Id.* (citing *Hernandez-Luis v. INS*, 869 F.2d 496, 498 (9th Cir. 1989); *State of Texas v. Lyng*, 868 F.2d 795, 799-800 (5th Cir. 1989); *United States v. Cerda-Pena*, 799 F.2d 1374, 1377 (9th Cir. 1986); *Aero Mayflower Transit, Inc. v. ICC*, 228 U.S. App. D.C. 438, 711 F.2d 224, 232 (D.C. Cir. 1983); *Diaz v. Department of the Air Force*, 63 F.3d 1107, 1109 (Fed. Cir. 1995)).

The statute at issue in this case is the CDSOA, which provides for distribution of all funds (including all interest earned on the funds) from assessed duties received in the preceding

fiscal year to affected domestic producers. 19 U.S.C. § 1675c(d)(3) (2003). While Congress has

provided no indication that it intended that Customs lose its authority to administer the CDSOA

if it misses the regulatory deadline imposed by section 159.62(a), Congress has made it clear that

the purpose of the CDSOA is the protection of domestic producers. *See* CONGRESSIONAL

FINDINGS ACT, Oct. 28, 2000, P.L. 106-387, § 1(a), 114 Stat. 1549 (enacting into law § 1002 of

Title X of H.R. 5426 (114 Stat. 1549A-72), as introduced on Oct. 6, 2000) ("Consistent with the

rights of the United States under the World Trade Organization, injurious dumping is to be

condemned and actionable subsidies which cause injury to domestic industries must be

effectively neutralized."); WTO DECISION AND THE CDO ACT, 108th Cong. (2003), 149 Cong.

Rec. S1064-03 (statement of Mr. Hollings) ("The [CDSOA] ensures that the U.S. companies and

their workers can compete against unfair imports from foreign companies who dump their

products in the U.S. If a foreign company continues to dump its products in the U.S. after having

been found guilty of that practice, the [CDSOA] allows that future penalty tariff payments be

made to the companies who are being injured. We would all prefer that companies halt their

illegal dumping, but if a foreign competitor chooses to continue the predatory practices, then the

tariffs assist the U.S. workers and industry to remain competitive. . . . [T]he money assists the

impacted companies to help them remain competitive, invest in new technologies and keep jobs

in the U.S.").[5] Unlike in *Kemira*, where the plaintiff was a foreign importer of fiber and found to

---

[5] The court notes that the legislative history of the CDSOA is not as robust as that of other provisions of the United States Code. *See* 146 CONG. REC. S10732-01 (Oct. 18, 2000) (statement of Sen. Nickels). Such as it is, however, the legislative history strongly supports Plaintiff's claim that the CDSOA was enacted to benefit domestic producers, and that it accomplishes this objective in part by providing for collected duties to be distributed to qualified domestic producers.

be outside the national interest of the timing regulation implicated in that case, the harm to Dixon

by Customs' delay in this case is emblematic of the harm done to the domestic industry. *Cf.*

*Kemira*, 61 F.3d at 875-76 ("we strongly deplore Commerce's or any other agency's failure to

follow its own regulations . . . [s]uch failure harms those who assume agency compliance . . .

[h]owever, such prejudice has not been shown here.").

Dixon is precisely one of the contemplated beneficiaries of the CDSOA. *See* 19 U.S.C. §

1675c(b)(1) . Thus, Dixon's interest in receiving its share of the anti-dumping duties assessed

against Chinese pencil manufacturers was clearly injured by Customs' failure to give timely

notice of its intent to distribute – the only notice that Customs' regulations direct domestic

producers to expect. Such failure harms those who assume agency compliance with section

159.62(a) and are prejudiced by non-compliance, particularly because domestic producers receive

no other indication of Customs' intent to distribute an offset or the deadline within which to file

for a share of the offset. *Kemira*, 61 F.3d at 875-76. Such prejudice has been shown here.

### Conclusion

Because Customs' failure to publish timely notice of its intent to distribute the

antidumping duty offset substantially prejudiced Dixon, Dixon's motion for judgment on the

agency record is granted. Counsel are ordered to confer regarding a remedy and are further

ordered to advise the court, 30 days from the date of this opinion, of the proposed remedy.


       April 4, 2005                                                                                      /s/ Judith M. Barzilay

Dated:_____                    _____

      New York, NY                                                                                         Judith M. Barzilay, Judge