# United States Court of Appeals for the Federal Circuit

06-1042, -1143

DIXON TICONDEROGA COMPANY,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant,

and

MUSGRAVE PENCIL COMPANY,
ROSEMOON PENCIL COMPANY
and GENERAL PENCIL COMPANY,

Defendants-Appellants.

Daniel E. Traver, Gray Robinson, PA, of Orlando, Florida, argued for plaintiff-appellee. On the brief was Guy S. Haggard.

David S. Silverbrand, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant United States. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director, of Washington, DC. Of counsel on the brief was Charles Steuart, Attorney, Office of Chief Counsel, United States Customs and Border Protection, of Washington, DC.

George W. Thompson, Neville Peterson LLP, of Washington, DC, argued for defendants-appellants Musgrave Pencil Company, et al. With him on the brief were Curtis W. Knauss and John M. Peterson, of New York, New York.

Appealed from: United States Court of International Trade

Judge Judith M. Barzilay

# United States Court of Appeals for the Federal Circuit

06-1042, -1143

DIXON TICONDEROGA COMPANY,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant,

and

MUSGRAVE PENCIL COMPANY,
ROSEMOON PENCIL COMPANY
and GENERAL PENCIL COMPANY,

Defendants-Appellants.

_____

DECIDED: November 6, 2006

_____

Before MICHEL, <u>Chief Judge</u>, ARCHER, <u>Senior Circuit Judge</u>, and LINN, <u>Circuit Judge</u>.

ARCHER, <u>Senior Circuit Judge</u>.

The government and Musgrave Pencil Company, Rosemoon Pencil Company, and General Pencil Company ("the pencil companies") appeal the United States Court of International Trade's judgment granting Dixon Ticonderoga Company's ("Dixon") motion for judgment on the administrative record. <u>Dixon Ticonderoga Co. v. United States Customs & Border Prot.</u>, No. 04-00027 (Ct. Int'l Trade Apr. 4, 2005). Because the record contains no evidence that Dixon was substantially prejudiced by the United

States Customs and Border Protection's ("Customs") failure to timely publish a notice of intention to distribute assessed duties as required by 19 C.F.R. § 159.62(a), we reverse.

I

The Continued Dumping and Subsidy Offset Act ("CDSOA") provides that assessed duties received from antidumping orders, countervailing duty orders, or findings under the Antidumping Act of 1921 be distributed to "affected domestic producers" for certain qualifying expenditures. 19 U.S.C. § 1975c (2003). As a part of the CDSOA distribution process, Customs is statutorily required to publish a Notice of Intent to Distribute ("Notice") at least 30 days before the distribution of a continued dumping and subsidy offset and to make distributions within 60 days after the fiscal year. Id. § 1975c(c), (d)(2). In implementing the statute, Customs is required by regulation to publish the Notice at least 90 days before the end of the fiscal year. 19 C.F.R. § 159.62(a) (2003). This is generally done in the Federal Register. Claimants seeking a share of the distribution then have 60 days from the date of publication of the Notice to file the certifications required to receive offset distributions. 19 C.F.R. § 159.63(a) (2003).

In 2003, Customs published the Notice on July 14 ("the 2003 Notice"), 78 days prior to the end of the fiscal year and twelve days after the regulatory deadline. See Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 68 Fed. Reg. 471,597 (July 14, 2003). Dixon filed its application to receive a portion of the relevant assessed duties for Fiscal Year 2003 102 days after Customs' publication of the 2003 Notice. Customs denied Dixon's application, and Dixon appealed this denial to the Court of International Trade. Dixon argued to the Court of International

Trade (and to us) that Customs' failure to provide notice as required by 19 C.F.R. § 159.62(a) caused it, as well as other domestic pencil manufacturers, to file late.

The Court of International Trade concluded that the timing requirements of 19 C.F.R. § 159.62(a) were merely procedural aids in applying the CDSOA and thus Customs did not lose its authority to administer the CDSOA when it failed to meet its own regulatory timing requirements. Id. at 9. The court also held, however, that Dixon was prejudiced by this regulatory violation. Accordingly, the court granted Dixon's motion and entered judgment in favor of Dixon. Id. at 10.

The government and the pencil companies appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

II

When reviewing decisions by the Court of International Trade pursuant to 28 U.S.C. § 1581(i), we apply the standard of review set forth in 5 U.S.C. § 706. Consol. Bearings Co. v. United States, 348 F.3d 997, 1004 (Fed. Cir. 2003). Thus, we "will set aside Customs' denial of offset distributions only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" See Candle Corp. of Am. v. U.S. Int'l Trade Comm'n, 374 F.3d 1087, 1091 (Fed. Cir. 2004) (quoting 5 U.S.C. § 706).

III

An agency is generally required to comply with its own regulations. See Kemira Fibers Oy v. United States, 61 F.3d 866, 871 (Fed. Cir. 1995). However, simple failure of an agency to follow a procedural requirement does not void subsequent agency

action.[1]  See id. at 868, 875 (holding that failure to timely comply with the notice requirement of 19 C.F.R. § 353.25(d) did not deprive the Department of Commerce of the authority to commence an administrative review where the antidumping review was noticed by the agency after the regulatory deadline); Brock v. Pierce County, 476 U.S. 253, 260 (1986).  Rather, in order to prevail, Dixon must establish that it was substantially prejudiced by Customs' noncompliance with 19 C.F.R. § 159.62(a).  See Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 539 (1970) ("[I]t is always within the discretion of . . . an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of [an agency] in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party.").

We recently discussed the issue of prejudice in the context of failure to comply with a notice regulation.  In PAM, S.p.A. v. United States, 463 F.3d 1345 (Fed. Cir. Sept. 13, 2006), a domestic producer violated 19 C.F.R. § 351.303(f)(3)(ii) by failing to give a foreign exporter, PAM, notice of a request for further administrative review of several companies, including PAM, that were under antidumping duty orders.  Following the request for further review, the Department of Commerce ("Commerce"), as required by statute, published notice of its initiation of this review in the Federal Register listing the companies involved, including PAM.  Id. at 1346.  This was the first time PAM learned of the request for further review.  There was a 17-day lag between the time that the domestic producer should have served notice of its request for review on PAM and

---

[1]  No party challenges the Court of International Trade's determination that the timing requirements of 19 C.F.R. § 159.62(a) are merely procedural aids in applying the CDSOA.

the time that Commerce published notice of the initiation of review. Id. at 1346 n.2. Ultimately, PAM was given a 29-day extension to file its response to the questionnaires subsequently provided by Commerce. In concluding that PAM had not demonstrated that it was substantially prejudiced, we noted that "the total amount of additional time Commerce granted to PAM . . . far exceeded the 17 days PAM lost due to the lack of service" by the domestic producer. Id. at 1349. We further observed that "PAM neither claim[ed] or attempt[ed] to show that [the domestic company's] failure to serve it impeded its ability to respond to and defend its interests in the administrative review." Id.

The only discernable difference between the present case and PAM is that in PAM the party asserting prejudice was ultimately given several extensions to complete its response to Customs' questionnaire. Here, Dixon was not given more than 60 days from the date of the Notice to file its certification request; however, no extension was requested. Indeed, Dixon has not asserted that this time period was insufficient either to determine whether it wished to request a disbursement or to actually request a disbursement.

In fact, Dixon has provided no evidence, or even an allegation (other than attorney argument), that the cause of its failure to file a timely application was Customs' late publication of the Notice. Additionally, there is no indication in the record as to why Dixon failed to monitor the Federal Register past the publication deadline of 19 C.F.R. § 159.62(a), as it had the previous year.

Dixon argues that a statement in Intercargo Insurance Co. v. United States, 83 F.3d 391 (Fed. Cir 1996), supports the Court of International Trade's finding of prejudice

here. Intercargo explained that "prejudice" in this context "means injury to an interest that the statute, regulation, or rule in question was designed to protect." Id. at 396. Dixon asserts that because the Antidumping Act was enacted to protect U.S. industries from reduced-price foreign products and Dixon is a domestic producer, these facts alone demonstrate that it was prejudiced under Intercargo. This argument ignores the fact that the regulation violated here is one governing notice to domestic producers regarding Customs' intention to distribute duties under the CDSOA, not the Antidumping Act itself. While it is true that the CDSOA is intended to protect domestic producers, see CDSOA, Pub. L. No. 106-387, § 1(a), 114 Stat. 1549 (2000), the purpose of 19 C.F.R. § 159.62(a) is simply to provide notice to the domestic producers that disbursements pursuant to the CDSOA are available for a given year. As discussed above, Dixon has failed to present any evidence that such an interest was injured. The regulation itself does not function to protect domestic producers from foreign dumped products.

Finally, the Court of International Trade concluded that Customs' failure to timely publish the 2003 Notice harmed domestic producers, such as Dixon, who assume agency compliance with § 195.62(a) and are prejudiced by noncompliance because they receive no other indication of Customs' intent to distribute an offset or the deadline within which to file for a share of the offset. Dixon, slip op. at 11. The flaw in this analysis is that it simply assumes prejudice without requiring a showing thereof. For example, under the Court of International Trade's rationale, any domestic producer eligible for disbursements under the CDSOA is prejudiced whenever Customs is late in publishing its distribution notice regardless of whether the domestic producer actually

06-1042, -1143                    6

seeks disbursements.  Such a result is illogical.  In fact, the Court of International Trade's holding would effectively eliminate the prejudice requirement.  As a result, any time an agency misses a statutory or regulatory deadline, its subsequent action could be challenged (and voided) indefinitely.

IV

Because the administrative record contains no evidence that Dixon was prejudiced by Customs' late publication of the 2003 Notice, we reverse the judgment of the Court of International Trade.

REVERSED.