# United States Court of Appeals for the Federal Circuit

---

**SUNTEC INDUSTRIES CO., LTD.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**MID CONTINENT NAIL CORPORATION,**
*Defendant*

---

2016-2093

---

Appeal from the United States Court of International Trade in No. 1:13-cv-00157-RKM, Senior Judge R. Kenton Musgrave.

---

Decided: May 30, 2017

---

MARK B. LEHNARDT, Antidumping Defense Group, LLC, Washington, DC, argued for plaintiff-appellant.

STEPHEN CARL TOSINI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BENJAMIN C. MIZER, JEANNE E. DAVIDSON, PATRICIA M. MCCARTHY; MICHAEL THOMAS GAGAIN, Office

of the Chief Counsel for Import Administration, United States Department of Commerce, Washington, DC.

_____

Before NEWMAN, TARANTO, and CHEN, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* TARANTO.
Dissenting opinion filed by *Circuit Judge* NEWMAN.

TARANTO, *Circuit Judge*.

This case arises from the U.S. Department of Commerce's third administrative review of its antidumping-duty order covering certain steel nails from China. Mid Continent Nail Corporation, a domestic entity, asked Commerce to initiate the third administrative review to determine the proper duty rates for the covered period, but Mid Continent did not serve the request directly on Suntec Industries, a Chinese exporter and producer named in the antidumping order and in the request. As this case comes to us, it is undisputed that Mid Continent thereby violated a service requirement stated in a Commerce regulation. When Commerce actually initiated the review about a month after receiving the request, it published a notice of the initiation in the Federal Register, as provided in 19 U.S.C. § 1675(a)(1), which states that Commerce shall initiate review "if a request for such a review has been received and after publication of notice of such review in the Federal Register." Despite the Federal Register publication, however, Suntec did not participate in the review. Evidently because of a lapse in its relationship with the counsel who had been its representative for years in the steel-nail proceedings, Suntec remained unaware of the review until Commerce announced the final results (or a few days earlier).

Based on the service deficiency regarding the request for the review, Suntec sued in the Court of International Trade to set aside the results of the review at least as applied to Suntec. The court rejected the challenge. It

held that Suntec had failed to demonstrate that it was substantially prejudiced by the service error as to the request for the review in this case. In particular, it concluded that the Federal Register notice of initiation of the review constituted notice to Suntec as a matter of law and fully enabled Suntec to participate in the review because Suntec did not show any prejudice from not knowing of the request in the pre-initiation period. We affirm.

I

In 2008, Commerce issued an antidumping-duty order, under 19 U.S.C. § 1673, covering certain steel nails from China. Certain Steel Nails from the People's Republic of China: Final Determination of Sales at Less Than Fair Value and Partial Affirmative Determination of Critical Circumstances, 73 Fed. Reg. 33,977 (Dep't of Commerce June 16, 2008). The Final Determination expressly covers Suntec, which was among the few foreign entities for which Commerce specifically verified information (at Suntec's Shanghai location) pursuant to 19 U.S.C. § 1677m(i). *Id.* at 33,977, 33,980, 33,982, 33,983; *see* J.A. 194. Suntec had established its entitlement to a rate separate from the China-wide rate of 118.04 percent, and Commerce assigned Suntec a rate of 21.24 percent. 73 Fed. Reg. at 33,981, 33,984.

The common annual administrative-review process pursuant to 19 U.S.C. § 1675 then began. In the first two years after issuance of the 2008 order, *i.e.*, the years beginning August 1, 2008, and August 1, 2009, respectively, Commerce published Federal Register notices announcing the opportunity to request, Mid Continent requested, and Commerce then initiated (announced by publication in the Federal Register) administrative reviews of the proper duty rate under the order. In each year, the request and initiation included Suntec. In each year, Mid Continent served the request on a Chinese law firm that Suntec had designated as representing it; the

certificates of service list that firm's Shanghai address, not Suntec's own, different Shanghai address. In each year, Suntec participated in the review by filing a "separate rate certification," Mid Continent then dropped its review request as to Suntec, and Commerce in turn rescinded the review of Suntec. *See* J.A. 194–96. The effect was to leave the 21.24 percent rate in place for Suntec. *See* Certain Steel Nails from the People's Republic of China:  Notice of Partial Rescission of the First Antidumping Duty Administrative Review, 75 Fed. Reg. 43,149, 43,150 & nn.1–2 (Dep't of Commerce July 23, 2010).

This case concerns the third annual administrative review, for the year beginning August 1, 2010.  On August 1, 2011, Commerce published a Federal Register notice of the opportunity to request a review, J.A. 196, and on August 31, 2011, Mid Continent requested such a review, naming Suntec among many other entities, J.A. 196, 208. The certificate of service shows that, as in the first two administrative reviews, Mid Continent mailed a copy of the request to the Suntec-designated Shanghai lawyers' address, not to Suntec's own Shanghai address.  J.A. 196. Five weeks later, on October 3, 2011, Commerce published a notice of initiation of the review in the Federal Register.  Initiation of Antidumping and Countervailing Duty Administrative Reviews and Requests for Revocations in Part, 76 Fed. Reg. 61,076 (Dep't of Commerce Oct. 3, 2011) (Notice of Initiation).  The notice of initiation in the Federal Register expressly lists Suntec as a party subject to the administrative review.  *Id.* at 61,082.

Commerce conducted the review and issued its final determination on March 18, 2013.  Certain Steel Nails from the People's Republic of China; Final Results of Third Antidumping Duty Administrative Review; 2010–2011, 78 Fed. Reg. 16,651 (Dep't of Commerce Mar. 18, 2013).  The final determination recites that Suntec, among other entities, did not apply for a rate separate

from the China-wide rate and therefore was assigned the China-wide rate of 118.04 percent. *Id.* at 16,652. As for the reason for Suntec's non-participation, it is now undisputed that Suntec was in fact unaware of the third administrative review until just after, or perhaps nine days before, the final determination issued. J.A. 73, 197, 244.[1]

Thirty-one days after Commerce published the final results, Suntec challenged the initiation of the administrative review in the Court of International Trade, arguing that the initiation was invalid as to Suntec because Mid Continent did not serve Suntec with the request for review as required by 19 C.F.R. § 351.303(f)(3)(ii). The court first denied Commerce's motion to dismiss. The court concluded that it had jurisdiction under 28 U.S.C. § 1581(i) and that Suntec's complaint allegations, if true, would establish that Mid Continent failed to comply with the service requirements contained in 19 C.F.R. § 351.303(f)(3)(ii). *Suntec Indus. Co. v. United States*, 951 F. Supp. 2d 1341, 1346–48, 1349 (Ct. Int'l Trade 2013).

Subsequently, the court considered and granted Commerce's motion for summary judgment. The court concluded that Mid Continent did violate the service requirement of 19 C.F.R. § 351.303(f)(3)(ii). Under the

---

[1] Suntec participated in the fourth and fifth administrative reviews, seeking and receiving a rate separate from the (still 118.04 percent) China-wide rate. *See* Certain Steel Nails from the People's Republic of China: Final Results of Fourth Antidumping Duty Administrative Review; 2011–2012, 79 Fed. Reg. 19,316, 19,318 (Dep't of Commerce Apr. 8, 2014) (assigning Suntec 10.42 percent rate); Certain Steel Nails from the People's Republic of China: Final Results of Fifth Antidumping Duty Administrative Review; 2012–2013, 80 Fed. Reg. 18,816, 18,817 (Dep't of Commerce Apr. 8, 2015) (assigning Suntec 16.62 percent rate).

regulation, "an interested party that files with the Department a request for . . . an administrative review . . . must serve a copy of the request by personal service or first class mail on each exporter or producer specified in the request . . . by the end of the anniversary month or within ten days of filing the request for review, whichever is later." *Id.* Mid Continent did not serve a copy of the request on Suntec. *Suntec Indus. Co. v. United States*, No. 13-00157, 2016 WL 1621088, at *1, *4 (Ct. Int'l Trade Apr. 21, 2016).

Nevertheless, the court held that Suntec was not entitled to relief because it had failed to make a showing that would permit a reasonable finding that it was prejudiced by Mid Continent's failure to serve its request for initiation of the administrative review. In particular, the court concluded that the Federal Register notice of initiation sufficed as a matter of law to give Suntec notice of the proceeding upon its initiation, so that, to show prejudicial error, Suntec had to establish prejudice from losing the five-week pre-initiation period to prepare for participation in the review post-initiation. It held that Suntec had made no showing of any such pre-initiation prejudice. On that basis, the court granted Commerce's motion for summary judgment. *Id.* at *7.

Suntec appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

II

We review the existence of jurisdiction in the Court of International Trade in this case de novo. *Int'l Custom Prods. v. United States*, 467 F.3d 1324, 1326 (Fed. Cir. 2006); *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1001 (Fed. Cir. 2003). We review the grant of summary judgment de novo. *StoreWALL, LLC v. United States*, 644 F.3d 1358, 1361 (Fed. Cir. 2011). "When reviewing a Court of International Trade decision in an action initiated under 28 U.S.C. § 1581(i), this court

applies the standard of review set forth in 5 U.S.C. § 706." *PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n*, 684 F.3d 1374, 1379 (Fed. Cir. 2012); 28 U.S.C. § 2640(e).[2]

## A

We begin with the government's contention that the Court of International Trade lacked jurisdiction to hear this case. Suntec's complaint invoked jurisdiction under 28 U.S.C. § 1581(i), whose language, as relevant here, confers jurisdiction over a civil action arising out of a law providing for duties on the importation of merchandise for reasons other than the raising of revenue or for "administration and enforcement with respect to" such duties. That language covers antidumping duties, and associated administration and enforcement, but to ensure that the statute works as intended, "we have held 'that jurisdiction under subsection 1581(i) may not be invoked if jurisdiction under another subsection of section 1581 is or could have been available, unless the other subsection is shown to be manifestly inadequate.'" *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1360 (Fed. Cir. 2016) (quoting *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292 (Fed. Cir. 2008)). To determine whether another subsection could have been available, "[w]e look to the 'true nature of the action.'" *Id.* (quoting *Hartford Fire Ins.*, 544 F.3d at 1293).

The government argues that this case is outside § 1581(i) because Suntec could have challenged Commerce's final determination under § 1581(c). We disagree. To adopt the government's contention that this case

---

[2]  Commerce argues that the Court of International Trade misapplied the standard of review when it considered Suntec's extra-record evidence. We need not address that argument because we conclude that affirmance is required even in light of Suntec's evidence.

comes within § 1581(c), we would have to conclude that Suntec was or could have been a party to the administrative review. We cannot draw that conclusion.

28 U.S.C. § 1581(c) gives the Court of International Trade exclusive jurisdiction over any civil action commenced under 19 U.S.C. § 1516a. The relevant provisions of § 1516a are those which allow "an interested party *who is a party to the proceeding in connection with which the matter arises*" to "commence an action" to "contest[] any factual findings or legal conclusions upon which" a "final determination" in an administrative review under 19 U.S.C. § 1675 "is based." 19 U.S.C. § 1516a(a)(2)(A), (B)(iii) (emphasis added). The requirement that the plaintiff have been a party in the administrative review is reinforced by 28 U.S.C. § 2631(c) ("A civil action contesting a determination listed in [19 U.S.C. § 1516a] may be commenced . . . by any interested party *who was a party to the proceeding in connection with which the matter arose*.") (emphasis added). *See* 19 C.F.R. § 351.102(b)(36) ("'Party to the proceeding' means any interested party that actively participates, through written submissions of factual information or written argument, in a segment of a proceeding.").

Suntec was not a party to the administrative review. And we cannot conclude, in our jurisdictional analysis, that Suntec could have been such a party. We assume the correctness of Suntec's merits contention for the jurisdictional analysis here. *Cf. Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (standing analysis assumes correctness of merits allegations). Suntec's claim on the merits is that it could not have participated because it did not get notice of the proceeding and hence did not know that the proceeding was underway. 28 U.S.C. § 1581(c) is manifestly inadequate where a party is challenging the initiation of an administrative review based on the contention that it did not participate in the review precisely because it did not

get the legally required notice.  The Court of International Trade therefore had jurisdiction in this case under § 1581(i).[3]

B

The merits question presented to us takes as a given two premises not contested on this appeal.  One is that Mid Continent violated a regulation in requesting the third administrative review when it failed to mail a copy of the request to Suntec itself and instead mailed a copy to Suntec's designated legal representatives in Shanghai, as it had done in the first two administrative reviews.  The second is that Suntec's non-participation in the third administrative review likely cost it a good deal of money, at least on a per-unit basis. Rather than retaining its earlier 21.24 percent rate, it was assigned the China-wide rate of 118.04 percent.  What is at issue here is the connection between the service deficiency and Suntec's non-participation in the review.

The question on appeal is not whether the regulatory service deficiency could be a basis for judicial review under 5 U.S.C. § 706 even aside from whether the deficiency was prejudicial.  The Court of International Trade did not rule, and Commerce does not contend on appeal, that Suntec is barred from challenging Commerce's actions (its initiation of and final determinations in the review) because it was only Mid Continent, not Commerce, that was responsible for providing, and failed to provide, service as required by the governing regulation.

---

[3]   The government argues that *PAM, S.p.A. v. United States*, 463 F.3d 1345 (Fed. Cir. 2006), demonstrates that § 1581(c) was available to Suntec in this case to challenge the initiation of the review.  But *PAM* is unlike this case, because the exporter in *PAM* participated in the administrative review.  *See PAM*, 463 F.3d at 1346–47.

We may therefore assume that such a service deficiency can be a basis, in a proper case, for setting aside Commerce's actions as, *e.g.*, "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

Section 706, however, does not stop there in prescribing when a court may set aside agency action. Section § 706 commands that, when a court hears a challenge to an agency action, "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. The Supreme Court has held that the § 706 "rule of prejudicial error" command requires application of a traditional harmless-error analysis and that the person seeking relief from the error has the burden of showing prejudice caused by the error. *Shinseki v. Sanders*, 556 U.S. 396, 406, 409 (2009). Accordingly, the question presented here is whether Suntec has met its burden of establishing the connection between the service deficiency and Suntec's absence from the review that is required to constitute a showing of prejudicial error.

The crucial fact here is that there was an intervening event between the request and the review: the Federal Register notice of initiation of the review. If that notice of initiation constituted notice as a matter of law, then Suntec was responsible for its own non-participation in the review after that notice, and to show harm from the earlier service defect it would have had to show that it lost an opportunity for pre-initiation preparation that it would have needed to make post-initiation participation effective. Such a showing might be difficult, given that Commerce gave Suntec and others 60 days after initiation to make pertinent filings. *See* Notice of Initiation, 76 Fed. Reg. at 61,077. We need not say, however, what might be required to make such a showing. In this case, Suntec made no such showing based on the pre-initiation period and does not meaningfully argue otherwise in this court.

The question therefore comes down to whether the Federal Register notice constituted effective notice as a matter of law, to be treated as indistinguishable from actual notice. Like the Court of International Trade, we conclude that the Federal Register notice did constitute notice as a matter of law.

Our court and other courts have often recognized that a failure to give a person a required notice can be harmless—*e.g.*, where the person has actual knowledge of the relevant information or the notice defect was cured by a subsequent notice given in time for the person to act on the matter. *See, e.g.*, *United States v. Great Am. Ins. Co. of N.Y.*, 738 F.3d 1320, 1329–30 (Fed. Cir. 2013) (denying relief despite Commerce's violation of notice requirement in context of suspension of liquidation); *Dixon Ticonderoga Co. v. United States*, 468 F.3d 1353, 1355–56 (Fed. Cir. 2006) (denying remedy where party did not show that it was prejudiced by agency's failure to provide notice at time required by regulation); *Kemira Fibres Oy v. United States*, 61 F.3d 866, 875–76 (Fed. Cir. 1995) (as *Dixon*, 468 F.3d at 1355, summarized, "holding that failure to timely comply with the notice requirement of 19 C.F.R. § 353.25(d) did not deprive the Department of Commerce of the authority to commence an administrative review where the antidumping review was noticed by the agency after the regulatory deadline"); *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 394–96 (Fed. Cir. 1996) (finding lack of required information in notice harmless);[4] *see*

---

[4] We implicitly recognized the point in *Carter v. McDonald*, 794 F.3d 1342 (Fed. Cir. 2015), when we held that a notice defect was not cured by eventual notification after the deadline for submission of evidence. *See id.* at 1345 ("At least in this context, a 'cure' of the notice defect must mean some source providing notification of the same opportunity a correct notice would have provided.").

*also U.S. Telecom Ass'n v. Fed. Communication Comm'n*, 825 F.3d 674, 725 (D.C. Cir. 2016) (denying remedy for failure to provide notice where parties had actual knowledge of the final rule); *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1487–88 (9th Cir. 1992) (denying remedy for failure to provide notice during rulemaking because the parties had actual notice of the proceedings); *Aero Mayflower Transit Co., Inc. v. Interstate Commerce Comm'n*, 711 F.2d 224, 232 (D.C. Cir. 1983) (denying remedy for insufficiently informative agency notice where party contesting decision learned the relevant information in subsequent proceedings in time to present challenges).

We applied that familiar principle, and the requirement to show substantial prejudice of a notice defect, in *PAM, S.p.A. v. United States*, 463 F.3d 1345, 1348 (Fed. Cir. 2006), specifically in the context of the same regulatory service deficiency that is at issue here. In *PAM*, the domestic petitioners failed to serve PAM, a foreign exporter, with their request that Commerce initiate an administrative review, as required by 19 C.F.R. § 351.303(f)(3)(ii). Four weeks later, Commerce initiated the review and published notice of initiation in the Federal Register. PAM, listed in the notice, entered an appearance in the review the next day. *PAM*, 463 F.3d at 1346. When the review was complete, PAM argued that it was entitled to have the review set aside as to it because of the service defect. *Id.* at 1347. This court rejected that contention, reversing the Court of International Trade's contrary ruling. *Id.* at 1346.

The court held that PAM had to show prejudice to secure relief for the service defect. The court explained: "Even if a regulation is intended to confer an important procedural benefit, if the failure of a party to provide notice as required by such a regulation does not prejudice the non-notified party, then we think neither the government, the non-serving party, nor the public should be

penalized for such a failure." *Id.* at 1348. Acknowledging the procedural benefit provided by the regulation, the court followed *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 539 (1970), as well as this court's *Kemira* and *Intercargo* decisions, and held that PAM had to "show substantial prejudice" from the service deficiency to secure relief. *PAM*, 463 F.3d at 1347–48.

The court then held that PAM had not shown "that it was substantially prejudiced by [petitioners'] lack of service, which delayed its notification by several weeks." *Id.* at 1349. The court relied on the fact that "PAM received constructive and actual notice of the review by publication in the Federal Register" before the review began. *Id.* And while PAM did not have the pre-initiation time to prepare, it did not show prejudice as a result, because Commerce gave it "more than enough time to 'catch up.'" *Id.*

*PAM* makes clear how a deficiency in service of the request for a review could in some cases be prejudicial notwithstanding a fully effective Federal Register notice of initiation of the review. In particular, the un-served person may be able to prove prejudice from loss of pre-initiation time to prepare for effective post-initiation participation in the review. The regulation demanding service of the request is therefore not rendered unenforceable by treating the Federal Register notice of initiation as effective notice. But there was no such (uncured) prejudice in *PAM*. And in the present matter, as we have noted, Suntec has not shown, or even meaningfully argued for, prejudice relating to the pre-initiation period.

Accordingly, this case differs from *PAM* only in that here the Federal Register notice was not actually seen by Suntec, whereas PAM evidently saw the notice in its case. The question is whether the Federal Register notice nevertheless suffices to require the same no-prejudice result as in *PAM*. We conclude that it does, based on the

background law regarding Federal Register notices and the specific congressional prescription of Federal Register notice for the initiation of administrative reviews under 19 U.S.C. § 1675(a).

The background law includes two provisions of the Federal Register Act, codified in Title 44 of the U.S. Code. Those provisions establish a broad, non-agency-specific default rule that Federal Register notices are treated as legally effective notices in a wide range of circumstances. *See, e.g.*, *Wolfson v. United States*, 492 F.2d 1386, 1392 (Ct. Cl. 1974) ("It is well settled that when regulations are published in the Federal Register they give legal notice of their contents to all who may be affected thereby."); *Aris Gloves, Inc. v. United States*, 281 F.2d 954, 958 (C.C.P.A. 1958) ("Congress intended a proper publication in the Federal Register to be considered reasonable public notice unless otherwise provided by statute.").

One of the Title 44 provisions says: "Unless otherwise specifically provided by statute, filing of a document, required or authorized to be published by section 1505 of this title, except in cases where notice by publication is insufficient in law, is sufficient to give notice of the contents of the document to a person subject to or affected by it." 44 U.S.C. § 1507. That provision applies to the initiation notice here. Congress specifically required Commerce to publish the notice in the Federal Register, 19 U.S.C. § 1675(a)(1), and Commerce did so. Section 1507, standing alone, therefore applies to make the publication "sufficient to give notice of [its] contents . . . to a person subject to or affected by it," 44 U.S.C. § 1507, which includes Suntec.

The second Title 44 provision of relevance is 44 U.S.C. § 1508, which addresses a narrower situation of certain notices of timing information regarding hearings or opportunities to be heard. The provision says: "A notice of hearing or of opportunity to be heard, required or author-

ized to be given by an Act of Congress, . . . shall be deemed to have been given to all persons residing within the States of the Union and the District of Columbia, except in cases when notice by publication is insufficient in law, where the notice is published in the Federal Register" and it satisfies certain timing conditions related to "the date fixed in the notice for the hearing or for the termination of the opportunity to be heard." 44 U.S.C. § 1508. In this case, it is undisputed that the initiation notice at issue gave Suntec an opportunity to be heard by specified dates after the initiation. Notice of Initiation, 76 Fed. Reg. at 61,076–77, 61,082; *see* 19 U.S.C. § 1675(e) (requiring that in administrative reviews, Commerce "shall, upon the request of an interested party, hold a hearing in accordance with section 1677c(b)"); 19 U.S.C. § 1677(9) ("interested party" includes a "foreign manufacturer, producer, [and] exporter"). But for the fact that Suntec is not a resident of the States or the District of Columbia, 44 U.S.C. § 1508 would supplement section 1507's confirmation that the Federal Register notice of initiation sufficed to give notice.

Section 1508, however, does not apply to Suntec, a foreign firm, and so does not aid Commerce here. On the other hand, section 1508 does not resolve this case against Commerce. The provision merely declares the legal sufficiency of Federal Register notices of opportunities to be heard for the designated domestic firms, as a default rule applicable in a wide range of contexts not specific to any particular statutory regime. It sets a generic background floor of sufficient notice for domestic firms for the hearing-related circumstances covered. Section 1508 does not go further and declare that such notice is legally insufficient for foreign firms, regardless of the statutory context. It does not do so in terms, and it would not be sensible to read this generic, floor-setting provision as doing so impliedly. In particular, section 1508 cannot reasonably be read to deem Federal Register notice of a

hearing or opportunity to be heard legally insufficient as to foreign firms where a specific statutory or regulatory regime makes clear that such Federal Register notice provides foreign entities legally sufficient notice. That is the case here.

Under the relevant provisions of Title 19, we must conclude that a Federal Register publication of a notice of a review's initiation is sufficient as a matter of law to give notice to the named foreign exporters and producers. Congress was explicit in prescribing Federal Register publication as the mechanism of notice: Commerce "shall" review the duties "if a request for such a review has been received and after publication of notice of such review in the Federal Register." 19 U.S.C. § 1675(a)(1). It said just that while also guaranteeing "a hearing in accordance with" 19 U.S.C. § 1677c(b) to any "interested party" requesting one. 19 U.S.C. § 1675(e). Congress recognized that it is central, not incidental, to the review process that the "interested parties" typically include foreign firms named in the antidumping order as subject to antidumping duties: in defining "interested party," Congress listed "foreign manufacturer, producer, [and] exporter" first in its covered examples. 19 U.S.C. § 1677(9). And in the "hearing" provision mentioned in § 1675(e), Congress further confirmed that Federal Register notice suffices to give notice: "Any hearing required or permitted under this title shall be conducted after notice published in the Federal Register . . . ." 19 U.S.C. § 1677c(b).[5]

---

[5]    Indicating the distinctive character of the statutorily prescribed "hearing," the same provision declares that the hearing "shall not be subject to" a "procedure" subchapter of the Administrative Procedure Act, 5 U.S.C. §§ 551–559, or to that Act's "right of review" provision, 5 U.S.C. § 702. 19 U.S.C. § 1677c(b).

The legal sufficiency of Federal Register notice, we conclude, follows from the statutory provisions at issue. And we do not think that Suntec has identified anything implausible about the congressional scheme when so understood. A foreign exporter or producer that is expressly named in an antidumping order, and is subject to continuing antidumping duties for the protection of U.S. industry, can reasonably be expected to have knowledge of the established mechanism for regular reviews (upon request) to determine the final amount of duties owed, of the potentially severe consequences of non-participation by a foreign entity from a non-market economy, and of the need to maintain representation to monitor developments. Suntec itself had such knowledge, participating in the first two annual reviews and maintaining, until the lapse that caused the problem in this review, a relationship with counsel to provide the necessary monitoring. It is not unreasonable for Congress to provide a simple, familiar Federal Register notice mechanism that deems those in Suntec's position properly notified upon publication.

Suntec argues that it is irrelevant whether it is deemed to have gotten notice of the initiation of the review because Commerce can initiate a review only after receiving a valid request and a request is not valid unless it includes a certification of service. But that argument is just a reformulation of the assertion that, under the regulations, there was a service deficiency as to the request; deeming the request invalid changes nothing.[6] The

---

[6]  We note that the statute requires only receipt of a request and Federal Register publication of a notice of initiation, not service of the request on identified exporters. 19 U.S.C. § 1675(a)(1). A regulation requires "[e]ach document filed with [Commerce to] include a certificate of service," with the penalty for failure to do so being that the "Secretary may refuse to accept [the] document." 19

alternative articulation of the same point thus does not alter at all the need to show prejudice from the identified error. Suntec has not made that showing, because the Federal Register notice was effective as to initiation and Suntec showed no prejudice from the pre-initiation deficiency.

## III

For the foregoing reasons, we affirm the judgment of the Court of International Trade.

**AFFIRMED**

---

C.F.R. § 351.303(f)(2). Here, the Secretary accepted the request for review. Furthermore, the regulation that addresses the required contents of requests does not mention service on the exporters. *See* 19 C.F.R. § 351.213(b)(1) (stating that an interested party may request review of particular exporters or producers only if it "states why [it] desires the Secretary to review those particular exporters or producers").

# United States Court of Appeals
# for the Federal Circuit

---

**SUNTEC INDUSTRIES CO., LTD.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**MID CONTINENT NAIL CORPORATION,**
*Defendant*

---

2016-2093

---

Appeal from the United States Court of International Trade in No. 1:13-cv-00157-RKM, Senior Judge R. Kenton Musgrave.

---

NEWMAN, *Circuit Judge*, dissenting.

I respectfully dissent. Suntec did not receive the personal service required by regulation; the Court of International Trade held that the regulation was violated. *Suntec Indus. Co. v. United States*, 2016 WL 1621088, at *1, *4 (Ct. Int'l Trade Apr. 21, 2016). And Suntec never had actual notice of the review by Commerce and did not participate in the review. *Id.* at *3 (accepting Suntec's affidavits as true).

The regulatory violation was not harmless, and Suntec was substantially prejudiced, for it did not have the opportunity to participate at all. Constructive notice is not within the statute or rule. Commerce is required to enforce its regulation that requires the requestor to provide service to a party. 19 C.F.R. § 351.303(f)(3)(ii) contemplates that foreign entities may not be readers of the Federal Register and explicitly requires direct notice. *PAM, S.p.A. v. United States*, 463 F.3d 1345 (Fed. Cir. 2006), describes the potential harm to a party that had actual notice and actually participated in the proceeding. Suntec had no such notice, and did not participate.

Precedent includes some situations in which notice defects were harmless. In *PAM* and other cases, the person complaining about the lack of required regulatory notice nonetheless had actual notice and appeared to participate in the action. Since the early 1800's, a party who appeared in person or by attorney was deemed to have waived any defects in service. *Knox v. Summers*, 7 U.S. 496, 497 (1806) ("The court were unanimously of the opinion, that the appearance by attorney cured all irregularity of process."); *Pollard v. Dwight*, 8 U.S. 421, 428–29 (1808) ("By appearing to the action, the defendants in the court below placed themselves precisely in the situation in which they would have stood, had process been served upon them, and consequently waived all objections to the non-service of process."); *Creighton v. Kerr*, 87 U.S. 8, 12 (1873) ("A general appearance waives all question of the service of process."). The same principle applies here; a party who is un-served but appears anyway waives the issue of defects in service. However, Suntec was not served and did not appear.

The Administrative Procedure Act's prejudice requirement allows for harmless error, but the error here was not harmless. Suntec did not participate because it was, as we must accept, unaware of the proceeding. Suntec was unaware of the proceeding because it was not

informed that the request for review had been filed, and therefore had no reason to expect that a review would be instituted.

Without the notice required by Commerce's rule, the request was faulty and Commerce could not institute review of Suntec. By statute, the administering authority *shall* review "*if* a request for such a review has been received." 19 U.S.C. § 1675(a)(1) (emphasis added). Absent a request that was properly served, Commerce cannot institute a review. Commerce requires the requestor of an administrative review to provide actual notice to foreign manufacturers as part of the request for review. Commerce's rule requires:

> Request for review. In addition to the certificate of service requirements under paragraph (f)(2) of this section, an interested party that files with the Department a request for an expedited antidumping review, an administrative review, a new shipper review, or a changed circumstances review must serve a copy of the request by personal service or first class mail on each exporter or producer specified in the request and on the petitioner by the end of the anniversary month or within ten days of filing the request for review, whichever is later. If the interested party that files the request is unable to locate a particular exporter or producer, or the petitioner, the Secretary may accept the request for review if the Secretary is satisfied that the party made a reasonable attempt to serve a copy of the request on such person.

19 C.F.R. § 351.303(f)(3)(ii). This regulation requires that a requestor "must serve a copy of the request by personal service or first class mail on each exporter or producer specified in the request." Compliance with 351.303(f)(3)(ii) is not optional. The provision stating that the "Secretary may refuse to accept [the] document"

appears in Rule 351.303(f)(2), which generally deals with certificates of service for "documents filed with the Department." Rule 351.303(f)(3)(ii) expressly states that its requirements are "in addition to the certificate of service requirements under paragraph (f)(2)."

Here, there was no personal service, and the Secretary made no finding that the requestor made a reasonable attempt to serve. Without one of those two requirements, the rule is violated and the request is defective.

Commerce brushes off the violation as a harmless procedural defect. But the only way to render the violation harmless is by assuming that Suntec was obligated to appear, although without notice that the request had been filed. The court creates that obligation by charging Suntec with constructive notice by publication of the institution of the review in the Federal Register. Constructive notice is a legal fiction. *Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 878 (7th Cir. 2005) ("When a court says that the defendant received 'constructive notice' of the plaintiff's suit, it means that he didn't receive notice but we'll pretend he did").

However, constructive notice is not applicable here. Given Commerce's regulations, Suntec's duty to inquire did not begin until it received the required actual notice of the request. The Federal Register Act does not, by itself, compel foreign entities to monitor the Federal Register. Nor does the Tariff Act. The regulations require actual notice. Commerce assigned the burden to the requestor to provide actual notice to all the foreign manufacturers that a request had been filed. Foreign manufacturers are entitled to rely on the regulations that Commerce has promulgated. "It is no less good morals and good law that the Government should turn square corners in dealing with the people than that the people should turn square

corners in dealing with their Government." *St. Regis Paper Co. v. United States*, 368 U.S. 208, 229 (1961).

Commerce cannot, after the fact, nullify the regulatory scheme it created. From the court's contrary holding, I respectfully dissent.